IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ELIZABETH M.,[1]

                    Plaintiff,                              Case No. 3:19-cv-00301-YY

        v.

                                                           OPINION AND ORDER

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.


YOU, Magistrate Judge:

        Plaintiff Elizabeth M. seeks judicial review of the final decision by the Commissioner of

Social Security ("Commissioner") denying her application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433.  This court has

jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and

1383(g)(3).  For the reasons set forth below, the Commissioner's decision is REVERSED and

REMANDED for further proceedings.

_____

[1] In the interest of privacy, the court uses only plaintiff's first name and the initial of her last
name and does the same for other individuals whose identification could affect plaintiff's
privacy.

## PROCEDURAL HISTORY

Plaintiff filed her application for DIB on November 28, 2005.  Tr. 200, 225.  Her date last insured was December 31, 2019.  *Id.*  The Commissioner denied plaintiff's application for benefits initially and on reconsideration.  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which convened on October 31, 2017.  Tr. 163-99.  There, the ALJ received testimony from plaintiff and a vocational expert ("VE").  *Id.*  A supplemental hearing was convened on February 1, 2018.  Tr. 109-60.  At the second hearing, the ALJ received testimony from plaintiff, a VE, and a medical expert.  *Id.*  In a decision dated April 6, 2018, the ALJ determined that plaintiff was not disabled within the meaning of the Act.  Tr. 67-83.  The Appeals Council thereafter declined plaintiff's request for review.  Tr. 1-3.  Plaintiff now seeks judicial review by this court.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from

the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her amended alleged onset date, June 30, 2015. Tr. 69. At step two, the ALJ determined plaintiff suffered from the following severe impairments: right hip injury with surgeries and complaints of chronic pain, migraine headaches, asthma, and obstructive sleep apnea. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 70. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b), but was limited to lifting up to 15 pounds and lifting and carrying ten pounds frequently; standing and walking for four hours per eight-hour workday; sitting for six hours in an eight-hour workday; occasional balancing, stooping, kneeling, crouching, and crawling; and that she should avoid concentrated exposure to extreme cold, fumes, odors, dust, and gases, as well as hazards such as machinery, heights, and vibration. Tr. 71-81.

At step four, the ALJ found plaintiff was unable to perform her past relevant work as a powerhouse mechanic. Tr. 81. At step five, the ALJ determined that, considering her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform, including office helper, accessories assembler I, and storage rental clerk. Tr. 81-82. Accordingly, the ALJ concluded plaintiff was not disabled. Tr. 81-83.

## DISCUSSION

Plaintiff contends the ALJ erroneously: (1) rejected her subjective symptom testimony, and (2) failed to develop the record by refusing to receive medical records regarding plaintiff's fourth hip surgery.

## I.    Subjective Symptom Testimony

### A.    Relevant Law

A two-step process is employed for evaluating a claimant's testimony regarding the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by

offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminated the reference to "credibility," clarified that "subjective symptom evaluation is not an examination of an individual's character," and required the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. Because plaintiff's hearings took place after SSR 16-3p was enacted, it is applicable in this case.

///

///

**B.      Analysis**

At the heart of this case is plaintiff's testimony that she suffered from chronic and severe hip pain such that she would not be able to lie down or change positions frequently enough in the course of a normal workday or workweek.  Tr. 184.  The ALJ provided four reasons for rejecting plaintiff's subjective symptom testimony: (1) she worked in a modified light duty position prior to her alleged disability onset date; (2) she engaged in a rehabilitative exercise regimen; (3) a cardiologist noted that, aside from her hip issues, she was active and generally healthy; and (4) her subjective symptom allegations were unsupported by the objective medical evidence. Plaintiff's Opening Brief ("Pl.'s Br.") 10.

**1.      Modified Light Duty Position**

After plaintiff suffered a workplace hip injury in 2013, she could no longer perform her past relevant work as a hydroelectric powerhouse mechanic, a heavy-exertion job.  Tr. 72, 75, 165, 168.  Plaintiff filed a workers' compensation claim, and her employer, Portland General Electric ("PGE"), provided her a light-duty position in 2015, which she performed for roughly five months until she was terminated.[2]  Tr. 170, 174-75, 182.

At her first hearing, plaintiff testified that PGE "got to a point where they said they didn't want me back unless I could do my full capacity job."  Tr. 174.  She further explained, "when I was there on light duty, I was able to keep myself busy and find a lot of work for myself to do, but . . . [due to] new management coming in . . . it wasn't [] the work that they wanted me to do."  Tr. 174-75.  However, at her second hearing, plaintiff testified that she was "still having a lot of pain doing that job" despite "it was really light lifting."  Tr. 182.  When the ALJ asked plaintiff if

---

[2] Plaintiff performed the light-duty job from approximately February 2015 until June 2015.  *See* Pl.'s Br. 3 n.1; Def.'s Br. 4; Plaintiff's Reply Brief ("Pl.'s Reply") 5.

she could perform similar light-duty work, she testified that she would "have a lot of pain" and did not think she could change her position or lie down as often as needed.  Tr. 184.  The ALJ determined plaintiff's pain testimony was unreliable because of "significant inconsistencies" such as this.  Tr. 75.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding ALJ did not err in rejecting plaintiff's testimony where the layoff was unrelated to pain allegations).

Plaintiff argues the ALJ's determination was flawed in two ways: (1) the ALJ's reasoning was inconsistent with his evaluation of other pre-onset evidence, and (2) plaintiff was not given the opportunity to persist in light-duty work, so the termination was not material to the ALJ's non-disability decision.  Pl.'s Br. 3-6.

### a.    Inconsistent Reasoning Regarding Onset Date

Plaintiff contends that the ALJ's rejection of her testimony on grounds she attempted to return to work before her onset date is inconsistent with "multiple other points in his decision" where "the ALJ rejected evidence favorable to Plaintiff because it related to a period prior to the alleged onset of her disability."  Pl. Br. 11 (citing Tr. 75 (noting plaintiff's testimony that she "tried going back to work at PGE several times in a light duty capacity" and "she continued to hope to return to work at PGE"); Pl.'s Reply 3-4 (citing Tr. 76).  Indeed, the ALJ rejected some treating physicians' opinions that predated the alleged onset date.  *See* Tr. 75-76 (according "little weight" to the opinions of Andrea Herza, M.D., Hayley Piepmeyer, PA-C, and an "unknown provider").  Plaintiff contends that "[c]lear and convincing reasoning does not permit an adjudicator to reject evidence for one reason but refuse to apply that same reason to other evidence."  Pl.'s Reply 4.

Generally, ALJs have wide latitude in making evidentiary findings, as they are "responsible for determining credibility [of symptom complaints], resolving conflicts in the

medical testimony, and for resolving ambiguities." *Garrison*, 759 F.3d at 1009 (citation

omitted). Further, an ALJ is not required to believe every allegation of disabling pain. *Orn v.*

*Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). Thus, an ALJ is not automatically precluded from

finding that certain evidence predating the alleged onset date is probative of non-disability while

finding that other evidence is not. In fact, here, the ALJ cited specific grounds for rejecting the

pre-onset-date opinions at issue. *See* Tr. 75-76 (rejecting medical opinions on grounds of

brevity, conclusiveness, and lack of analysis). This does not constitute error.

Plaintiff also argues that her condition worsened while she attempted to perform light

duty, such that she was unable to thereafter perform the modified work. Prior to her first

administrative hearing, plaintiff amended her alleged disability onset date from November 2014

to June 30, 2015, to coincide with the conclusion of the light-duty position. Tr. 336, 430. As

plaintiff contends, the record reflects that her pain increased when performing light-duty work

and after her termination. Dr. Herzka noted on March 12, 2015:

> She continues to be painful. She feels that her strength is doing well but
> continues to have some stiffness and is painful. She is weight-bearing as
> tolerated. She feels that her hip has "grinding" deep in the groin. She is doing PT
> twice a week. *She started work recently and feels that her pain has worsened*
> *since this time.*

Tr. 631 (emphasis added). Dr. Herzka's observation was consistent with plaintiff's physical

examination that day, which included several references to pain. Tr. 632. Further, treating

physician Richard Orth, D.O., noted on June 15, 2015, that plaintiff continued to have pain

severe enough to limit her daily activities, and that she was not released to work at all. *See* Tr.

792. In 2017, Dr. Orth indicated that plaintiff's pain had gradually worsened over time after her

alleged onset date. Tr. 1871. The medical record as a whole clearly reflects that plaintiff

continued to seek treatment for her pain complaints both before and after she was terminated in

June 2015, including further surgery to address pain after the date of the decision.  Tr. 616, 618, 631-32, 640, 791-92, 1166, 1871.

That plaintiff experienced increasing pain while working light duty and thereafter is generally consistent with her testimony.  She explained that despite the "really light lifting" she was doing at her modified job, she was still having "a lot of pain."  Tr. 182.  Plaintiff further testified that even with a light-duty job, she would continue to have a lot of pain, could not change positions as needed, could not lie down as needed, and was unable to sit for longer than 45 minutes.  *Id.* at 182, 184.  Although the ALJ noted that plaintiff was able to perform light work for PGE, he did not mention plaintiff's assertions that her pain worsened during the modified job and, by the time of the hearing, rendered her unable to perform light work at all.  *See* Tr. 75.  As such, the ALJ failed to provide any explanation for rejecting significant testimony, which was error.  *Dodrill,* 12 F.3d at 918.

In response, the Commissioner relies on *Bruton v. Massanri*, 268 F.3d 824 (9th Cir. 2001), in which the Ninth Circuit affirmed an ALJ's rejection of pain testimony in part because the plaintiff stopped working for reasons unrelated to his alleged symptoms, thus making the inference that the alleged symptoms did not preclude work and were therefore unreliable.  *See* 268 F.3d at 828.  However, there, the ALJ additionally reasoned that the plaintiff did not seek medical attention until nine months after his job ended, and when he did seek it, he did not pursue treatment for the allegedly disabling pain.  *Id.*  The facts in the instant case reflect the opposite: plaintiff's pain increased with work and she aggressively sought treatment, including a series of surgeries, both before and after her period of modified work, which suggests her pain complaints are reliable.  Thus, the Commissioner's reliance on *Bruton* is unavailing.

///

9 – OPINION AND ORDER

###### b.       Opportunity to Persist in Light Duty Work

Plaintiff argues the ALJ's finding that she did not stop working due to her impairments was erroneous because she "was not given the opportunity to persist in light duty work."  Pl. Br. 11.  Plaintiff notes that under the regulations, "work lasting less than six months may constitute an unsuccessful work attempt, and unsuccessful work attempts do not preclude a finding of disability."  *Id.* at 12-13 (citing *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (willingness to attempt rehabilitative activity is not probative of present ability to engage in such activity).  Although the case that plaintiff cites, *Cox*, dealt with the issue of a "trial work period," plaintiff maintains her light duty position *was not* an unsuccessful work attempt, but rather was too brief to be probative of her ability to work on a sustained basis.  Pl.'s Reply 5; *see Cox*, 587 F.2d at 991 (citing 42 U.S.C. § 422(c)).

Plaintiff's argument does not withstand scrutiny for two reasons.  First, *Cox* is inapposite because its holding was predicated on the statutory delineations of what constitutes a "trial work period" and an "unsuccessful work attempt."  *See id.*; *see also* 20 C.F.R. § 404.1574(A) & (C).  Plaintiff asserts her light duty work was not a trial work period, but fails to provide any legal basis for the general proposition that a claimant must be afforded an opportunity to work for at least six months.  *See* Pl.'s Br. 12-14; Pl.'s Reply 5.

Second, even if *Cox* was applicable, the ALJ did not discount plaintiff's pain testimony solely because her light-duty job was probative of her present ability to work.  The ALJ provided three other reasons: plaintiff retained the ability to perform therapeutic exercises, an examining cardiologist indicated she was active and in good health, and plaintiff's allegations were unsupported by objective evidence.

Plaintiff also argues the ALJ erred by failing to inquire whether she could have persisted at her light-duty job if she had been allowed to continue. Pl.'s Br. 13. But, at her first hearing, the ALJ asked plaintiff about her light-duty job, and plaintiff replied that her employer "didn't want me back unless I could do my full capacity job . . . when I was there on light duty, I was able to keep myself busy and find a lot of work for myself to do . . . it wasn't, apparently, the work they wanted me to do." Tr. 174-75. Also, at the second hearing, the ALJ asked plaintiff what kind of difficulties she would have getting through full workdays or workweeks in a light duty job. Tr. 184. Plaintiff replied that she thought she would "have a lot of pain" and would not be able to change her position or lie down as needed. *Id.* Thus, the ALJ indeed inquired about plaintiff's ability to perform light work.

Nevertheless, as plaintiff maintains, the ALJ erroneously inferred she could persist in her light-duty job. The Commissioner concedes plaintiff "testified that she could not perform a light job because she would have too much pain and she would not be able to lie down or changed positions." Def.'s Br. 3. The Commissioner further maintains the ALJ was permitted to make the inference that plaintiff was able to persist at light-duty work under *Bruton*, 268 F.3d at 828. *See also Batson*, 359 F.3d at 1193 (ALJ may make "inferences reasonably drawn from the record"). However, the ALJ made no such inference explicit, and for the reasons explained *supra*, *Bruton* is not controlling. The ALJ made no mention in the decision about plaintiff's assertion that because her pain worsened, she was be unable to perform a light job without employment-precluding accommodations for sitting, standing, walking, and lying down. *See* Tr. 149, 184, 193.

Further, to the extent the Commissioner argues the ALJ's inference that plaintiff could not persist in work constituted an implicit rejection, it does not meet the requisite legal standard:

to reject a claimant's testimony, an ALJ is required to provide specific, clear and convincing reasons to do so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted).[3]  As noted above, the ALJ did not appear to consider plaintiff's allegations of worsening pain during and after her modified job or explain why the allegations were unreliable. *Trevizo*, 871 F.3d at 678.

### 2.    Rehabilitative Exercise Regimen

Plaintiff testified she was prescribed physical therapy exercises to increase her strength, but was not always able to perform them due to pain. Tr. 169-70.  Plaintiff also testified she continued to do her regimen two times per week for many years, it helped her functionality, and her pain increases when she "backs off." Tr. 170.  The ALJ determined plaintiff's testimony that she could use an elliptical, ride a stationary bike, and perform lunges was consistent with objective evidence of normal musculoskeletal and neurologic exams. Tr. 75; *see, e.g.*, Tr. 1119, 1681, 1988.

An ALJ may reject symptom allegations based on a claimant's activities for two reasons: (1) the activities are inconsistent with other claimant testimony, or (2) the activities meet the threshold for transferable work skills. *Orn*, 495 F.3d at 639.  Plaintiff argues the ALJ's rationale

---

[3] The Commissioner argues that the clear-and-convincing legal standard does not apply because it is inconsistent with 42 U.S.C. § 405(g) and the Supreme Court's holding in *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019). Def.'s Br. 1-2, 3 n.1, 6.  However, "[t]he Supreme Court confined its opinion in *Biestek* to a narrow question—whether an expert who testified about the availability of certain jobs in the economy and refused to provide the private market-survey data underlying her testimony could be categorically precluded from counting as 'substantial evidence.' . . .  That same question is not at issue here." *Padilla v. Berryhill*, No. 5:18-CV-06123-EJD, 2020 WL 978639, at *4 (N.D. Cal. Feb. 28, 2020) (citing *Biestek*, 139 S. Ct. at 1152, 1154 n.1).  Under controlling Ninth Circuit case law, to reject subjective symptom testimony, an ALJ must provide specific, clear and convincing reasons supported by substantial evidence. *Trevizo*, 871 F.3d at 678; *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (rejecting argument that *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc) excised the clear-and-convincing standard)).

is invalid under *Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001). Pl.'s Br. 14-15. There, the court held that although a claimant may perform rehabilitative activity for therapeutic reasons despite pain, it does not follow that a claimant could perform regular work for a prolonged period. *Vertigan*, 260 F.3d at 1050; *but cf. Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding ALJ may reject testimony that is inconsistent with a claimant's activities). The court determined that the plaintiff's ability to perform therapeutic activities did not translate to the ability to maintain gainful employment, essentially adopting a form of the second option articulated in *Orn*.

Here, the ALJ did not identify how plaintiff's ability to perform her exercise regimen was either inconsistent with her pain testimony or how it met the threshold for transferable work skills. As such, the ALJ's rationale was erroneous under *Vertigan* and *Orn*.

### 3.    Cardiologist's Note

An additional rationale proffered by the ALJ—that aside from her hip and migraine issues, plaintiff was noted to be generally healthy by a cardiologist—is not clear and convincing because it says nothing about plaintiff's hip and migraine impairments, nor did the ALJ identify why the chart note was probative of non-disability or how it contradicted plaintiff's pain allegations. *Trevizo*, 871 F.3d at 678.

### 4.    Inconsistency With Objective Medical Findings

Plaintiff argues the ALJ improperly rejected her pain testimony based on a lack of supporting objective medical evidence. The ALJ noted the record evidence did not contain "significant positive signs of chronic pain such as muscle atrophy, muscle spasms, valid neurologic deficits, valid positive straight leg raising tests, bowel or bladder dysfunction of neurological origin, or inflammatory signs." Tr. 75 (parenthetical phrases omitted).

13 – OPINION AND ORDER

Inconsistency with objective medical findings is a valid reason to reject claimant testimony. *Parra*, 481 F.3d 750.

However, an ALJ may not discredit a claimant's subjective symptom testimony *solely* because it is unsupported by objective evidence. *Berry v. Astrue*, 625 F.3d 1228, 1234 (9th Cir. 2010) (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). As discussed herein, the ALJ failed to provide other valid reasons for rejecting plaintiff's pain testimony.

### 5. Dr. Carlson's Medical Notes

The Commissioner argues plaintiff's pain allegations are inconsistent with a number of medical notes by examining physician Nels L. Carlson, M.D. Def.'s Br. 3-4. Dr. Carlson opined in May 2017 that plaintiff was "medically stationary and would require permanent limitations and restrictions in the sedentary to light range. I do not think she would need to be limited to part-time work with appropriate accommodations." Tr. 1636-37. In June 2017, the doctor indicated, "I think she would do best with a light level occupation." Tr. 1651. However, the ALJ did not invoke Dr. Carlson's reports as a reason to reject her symptom testimony. *See* Tr. 75, 79. Because the Commissioner's rationale is *post-hoc*, it is not a valid basis for this court to affirm the ALJ's decision. *Bray*, 554 F.3d at 1225-26.

## II. Failure to Obtain or Receive New Evidence

Plaintiff argues the ALJ erred by failing to "obtain" or "receive" additional evidence concerning her fourth hip surgery, which was performed after the ALJ hearings but before the decision issued. Pl.'s Br. 17-18. Plaintiff also asserts the Appeals Council failed to exhibit the evidence. *Id.* As the Commissioner accurately observes, the records at issue were in fact made part of the administrative record by the Appeals Council. *See* Tr. 18-63, 91-106.

Thus, plaintiff's assertion that the ALJ erred in refusing to "obtain" or "receive" the new evidence is unpersuasive. *See* Pl.'s Brief 18. The ALJ indicated he accepted the veracity of plaintiff's report of a fourth surgery, and the evidence was made part of the record. Tr. 67.

**III.    Remand for Further Proceedings**

When a court determines the Commissioner erred in some respect in making a decision to deny benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). Here, the ALJ failed to provide legally sufficient reasons to reject relevant pain testimony, and the error was not harmless based on the VE's testimony. Plaintiff does not request that this court consider remanding for immediate payment of benefits. Therefore, this case is for further proceedings on an open record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED August 12, 2020.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge